■ TROY POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, INC., et al., Appellants, v CITY OF TROY et al., Respondents. [750 NYS2d 352] —Kane, J. Appeal from an order of the Supreme Court (Canfield, J.), entered August 13, 2001 in Rensselaer County, which, inter alia, granted defendants' cross motion for summary judgment dismissing the complaint.

In September 1997, plaintiff Robert Hayden (hereinafter

plaintiff) was reappointed by defendant City of Troy as a police officer. At the time of his reappointment, plaintiff lived in an apartment in the City of Troy, Rensselaer County. In July 1998, plaintiff purchased a house outside the Troy city limits in the Town of Pittstown, Rensselaer County, with the intention of living there. Pursuant to Public Officers Law § 30 (4) (3),[1] on December 22, 1995, the Troy City Counsel adopted a resolution, codified as Code of Ordinances of the City of Troy, N.Y. (Troy Code) § 24-4,[2] requiring police officers hired after December 22, 1995 to reside within the Troy city limits. In June 1998, the City's assistant police chief advised plaintiff of the residency requirement and that failure to abide by the requirement "may ultimately result in dismissal from service." Thereafter, plaintiff received a letter from the City's personnel director advising plaintiff that the City has "instituted a practice that requires officers who come under the law to sign a form attesting to any change in their residences." Plaintiff was further advised that failure to sign the attestation form "could become a ground for disciplinary action."

On July 30, 1998, plaintiffs commenced this action seeking, inter alia, a declaration that Troy Code § 24-4 is "unconstitutional, invalid and void." After joinder of issue, plaintiffs moved for summary judgment arguing that Public Officers Law

---

1.  Public Officers Law § 30 (4) (3) provides in relevant part:
"4. Neither the provisions of this section, nor of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, creating a vacancy in a local office of a political subdivision or municipal corporation if the incumbent thereof ceases to be a resident of such political subdivision or municipal corporation, shall apply in the case of a person who is a member of the police force of any political subdivision or municipal corporation of the state and who while a member of such force resides (a) in the county in which such political subdivision or municipal corporation is located; * * *

"(3) If the police force of which he is a member consists of less than two hundred full-time members; provided, however, that the local legislative body of such political subdivision or municipal corporation having such police force shall have power to adopt and amend local laws, ordinances or resolutions of general application requiring members of such police force, other than those members covered by paragraph one or paragraph two of this subdivision, to reside in such political subdivision or municipal corporation * * * provided such local legislative body shall determine that a policeman may respond therefrom promptly and be available to render active service in such political subdivision or municipal corporation."

2.  Troy Code § 24-4 provides: "The city council believes that it would benefit the citizens of Troy if the members of the Troy Police Department resided within the city limits. Therefore, the police officers of the Troy Police Department are hereby required to reside within the Troy City limits. This provision shall take effect immediately except that it shall not apply to any current police officer of the police department who currently reside [sic] outside the city limits."

§ 3 (12) and § 30 (6), which exempt public officers employed by the City from having to reside within its corporate limits, preclude the City from enacting a local code imposing such a requirement on its police force. Defendants cross-moved for summary judgment dismissing the complaint in its entirety. Supreme Court granted defendants' cross motion and dismissed the complaint, declaring Troy Code § 24-4 to be constitutional and valid.

The primary issue, as presented on this appeal, is whether Troy Code § 24-4 is inconsistent with or preempted by Public Officers Law § 3 (12) and § 30 (6). "It is well settled that '[a] local law may be ruled invalid as inconsistent with State law not only where an express conflict exists between the State and local laws, but also where the State has clearly evinced a desire to preempt an entire field thereby precluding any further local regulation'" (*Hertz Corp. v City of New York*, 80 NY2d 565, 569, quoting *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 96-97 [citations omitted]). Public Officers Law § 3 (12) provides: "The provisions of this section or of any other provision of law requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall not apply to the appointment of public officers in the city of Troy, except the city manager of such city, provided that such appointed officers are residents of the county of Rensselaer." Public Officers Law § 30 (6) provides: "Neither the provisions of this section, nor of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, creating a vacancy in a local office of a political subdivision or municipal corporation if the incumbent thereof ceases to be a resident of such political subdivision or municipal corporation, shall apply in the case of appointed public officers in the city of Troy, except the city manager of such city, who reside in the county of Rensselaer."

Plaintiffs first argue that a court should not resort to an analysis of legislative history where the wording of a statute is plain, clear and unambiguous. They contend that because police officers are public officers, the plain wording of Public Officers Law § 3 (12) and § 30 (6) exempts them from being compelled to reside within the Troy city limits despite the authority under Public Officers Law § 30 (4) (3)—granted to other jurisdictions with police forces numbering 200 or less full-time members—to adopt a local law imposing such a requirement. It is generally acknowledged that "[u]nambiguous language in a statute must be construed to give effect to the plain meaning

of the words used" (*Van Amerogen v Donnini*, 78 NY2d 880, 884 [Bellacosa, J., dissenting]). However, because "[t]he primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177), the "legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear' " (*Riley v County of Broome, supra* at 463, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, at 252). The bill jacket accompanying the proposed amendments to Public Officers Law § 3 and § 30 reveals that the Legislature's intent in enacting these statutes was to enable the City to recruit qualified public officials residing outside the corporate limits to serve in the City's government (*see* Mem of Assembly Member Neil Kelleher, Bill Jacket, L 1975, ch 347), particularly, as noted by the then City Manager, for "upper echelon jobs" (Letter from John P. Buckley, City Manager, City of Troy, Bill Jacket, L 1975, ch 347). There is no mention of a similar need to attract recruits to the police ranks. Indeed, at the time the amendments were enacted, Public Officers Law § 30 (4) permitted city police officers to reside outside the Troy city limits provided they lived within Rensselaer County, although the authority existed under the same subdivision (*see* Public Officers Law § 30 [4] [3]) for the City to require its police officers, if the full-time police force numbered less than 200, to reside within the corporate limits.

Since the Legislature did not express a contrary intent (*see Matter of Dutchess County Dept. of Social Servs. [Day] v Day*, 96 NY2d 149, 153; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 221), Public Officers Law § 3 (12), § 30 (6) and § 30 (4) (3) should be construed " 'in a way that renders them internally compatible' " (*Matter of Dutchess County Dept. of Social Servs. [Day] v Day, supra* at 153, quoting *Matter of Aaron J.*, 80 NY2d 402, 407). Construing these statutes together so that effect may be given to each, we find that Public Officers Law § 30 (4) (3), like its counterparts in subdivisions (4-a) and (4-b) (pertaining to sanitation engineers and firefighters, respectively), regulates the residency of a certain class of public officer, i.e., police officers, while Public Officers Law § 3 (12) and § 30 (6) regulate generally the class of all other public officers. There is, therefore, no conflict among Public Officers Law § 3 (12), § 30 (6) and § 30 (4) (3). Likewise, the City's enactment of Troy Code § 24-4 is not inconsistent with Public Officers Law § 3 (12) and § 30 (6). Similarly, we find no preemptive intent on the Legislature's part to preclude the

City from enacting legislation imposing a residency requirement on its police officers by its enactment of Public Officers Law § 3 (12) and § 30 (6). Accordingly, we affirm Supreme Court's order finding Troy Code § 24-4 to be valid.

Cardona, P.J., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.